ORAL ARGUMENT NOT YET SCHEDULED

No. 25-5113 (CONSOLIDATED WITH NOS. 25-5121, 25-5154, 25-5155)

# In The United States Court of Appeals
# for the District of Columbia Circuit

---

FAIRHOLME FUNDS, INC, ON BEHALF OF ITS SERIES, THE FAIRHOLME FUND, *et al*.,

*Plaintiffs-Appellees*,

*v.*

FEDERAL HOUSING FINANCE AGENCY, IN ITS CAPACITY AS CONSERVATOR OF THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION, *et al*.,

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA NOS. 13-CV-1053, 13-MC-1288 (HON. ROYCE C. LAMBERTH)

---

**PLAINTIFFS' PRINCIPAL CROSS-APPEAL BRIEF**

---

David H. Thompson
Brian W. Barnes
John D. Ramer
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Berkley Plaintiffs-Appellees/Cross-Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES AND CORPORATE DISCLOSURE STATEMENT

Pursuant to D.C. Circuit Rule 28, Plaintiffs-Appellees/Cross-Appellants submit the following certificate:

### A. Parties and *Amici*

<u>Appellants/Cross-Appellees:</u>  The Federal Housing Finance Agency (FHFA) in its capacity as Conservator of the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation; the Federal National Mortgage Association (Fannie Mae); and the Federal Home Loan Mortgage Corporation (Freddie Mac).

<u>Appellees/Cross-Appellants:</u>  Plaintiffs Berkley Insurance Company, Acadia Insurance Company, Admiral Indemnity Company, Admiral Insurance Company, Berkley Regional Insurance Company, Carolina Casualty Insurance Company, Midwest Employers Casualty Insurance Company, Nautilus Insurance Company, and Preferred Employers Insurance Company (collectively, "the Berkley Plaintiffs").

<u>Amici:</u>  No amici are listed on the court's docket, and counsel is not aware of any.

### B. Rulings Under Review

The rulings under review are the District Court's rulings and orders that merged into the final judgment entered on March 20, 2024, ECF No. 428, and that

related to the denial of the Berkley Plaintiffs' ability to pursue restitution, reliance damages, or damages based on future lost profits based on the discounted cash flow analysis of the Plaintiffs' expert, including the Order granting in part and denying in part Defendants' Motion for Summary Judgment, ECF Nos. 195, 206;  the Order denying Plaintiffs' Motion for Leave To Amend Their Pretrial Statement, Serve a Supplemental Expert Report, and Adjust the Trial Schedule and Plaintiffs' Motion for Clarification and/or Partial Reconsideration, ECF Nos. 217, 218; and the Order denying Plaintiffs' Motion To Present Evidence and Arguments Concerning Reliance Damages, ECF Nos. 310, 311.

## C. Related Cases

The Court has consolidated the appeals in Nos. 25-5121, 25-5154, and 25-5155. This case was previously before this Court in Case No. 14-5243, and the consolidated cases 14-5254, 14-5260, and 14-5262. The Berkley Plaintiffs know of no other "related cases," as that term is defined by D.C. Circuit Rule 28(a)(1)(C), pending in other federal appellate courts or any other court in the District of Columbia.

## D. Corporate Disclosure Statement

Pursuant to Circuit Rule 26.1, Plaintiffs-Appellees/Cross-Appellants submit this corporate disclosure statement.

W.R. Berkley Insurance Corporation owns directly or indirectly the following Plaintiffs-Appellees/Cross-Appellants: Berkley Insurance Company, Acadia Insurance Company, Admiral Indemnity Company, Admiral Insurance Company, Berkley Regional Insurance Company, Carolina Casualty Insurance Company, Midwest Employers Casualty Insurance Company, Nautilus Insurance Company, and Preferred Employers Insurance Company. No publicly held corporation owns 10% or more of any of the above-mentioned Plaintiffs-Appellees'/Cross-Appellants' stock.

## TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES AND
CORPORATE DISCLOSURE STATEMENT ................................................. i

TABLE OF AUTHORITIES ................................................................... iv

GLOSSARY ...................................................................................... viii

STATEMENT CONCERNING ORAL ARGUMENT ............................................. ix

INTRODUCTION ................................................................................. 1

JURISDICTIONAL STATEMENT ............................................................ 3

STATEMENT OF THE ISSUES ............................................................... 3

STATUTES AND REGULATIONS ........................................................... 3

STATEMENT OF THE CASE ................................................................. 3

    I.    Factual Background ........................................................ 3

    II.   Procedural Background .................................................... 3

SUMMARY OF THE ARGUMENT .......................................................... 8

STANDARD OF REVIEW .................................................................... 9

ARGUMENT ..................................................................................... 9

    I.    HERA's Anti-Injunction Clause Does Not Foreclose Restitution
        Damages. ........................................................................ 9

        A.    Monetary Remedies Are Allowed Under The Anti-Injunction
            Clause Regardless Of Whether They Are Legal Or Equitable. 10

        B.    Restitution Damages Are Not Inherently Equitable. ................ 15

    II.   The District Court Should Have Allowed Plaintiffs To Present
        Evidence To The Jury Concerning Reliance Damages. ................. 17

        A.    Reliance Damages Are Available When The Full Amount Of
            Expectation Damages Is Too Uncertain. ................................ 18

        B.    The District Court Abused Its Discretion By Refusing To Let
            Plaintiffs Amend Their Pretrial Statement To Include Reliance
            Damages. .................................................................... 21

CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Am. Cap. Corp. v. FDIC*,
    472 F.3d 859 (Fed. Cir. 2006).......................................................................20

*AMG Capital LLC v. FTC*,
    593 U.S. 67 (2021)................................................................................11, 13

*Bauer v. FDIC*,
    38 F.4th 1114 (D.C. Cir. 2022) .......................................................................9

*Belcher v. Kirkwood*,
    238 Va. 430, 383 S.E.2d 729 (1989).......................................................16, 17

*Camalier & Buckley-Madison, Inc. v. Madison Hotel, Inc.*,
    513 F.2d 407 (D.C. Cir. 1975) .......................................................................2

*Clark v. Teeven Holding Co., Inc.*,
    625 A.2d 869 (Del. Ch. 1992) ......................................................................17

*Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia*,
    819 F.3d 476 (D.C. Cir. 2016) ...............................................................21, 22

[*]*Collins v. Yellen*,
    594 U.S. 220 (2021)...............................................................................1, 9, 10

*Dickerson v. Vills. of Five Points Prop. Owners Ass'n*,
    No. 2020-0420, 2020 WL 7251512 (Del. Ch. Dec. 9, 2020) .......................16

*Duncan Townsite Co. v. Lane*,
    245 U.S. 308 (1917)......................................................................................13

*Duncan v. Theratx, Inc.*,
    775 A.2d 1019 (Del. 2001) ...........................................................................18

*Feltner v. Columbia Pictures Television, Inc.*,
    523 U.S. 340 (1998)................................................................................16, 17

*Freeman v. FDIC*,
    56 F.3d 1394 (D.C. Cir. 1995) .....................................................................15

*Glendale Fed. Bank, FSB v. United States*,
    378 F.3d 1308 (Fed. Cir. 2004).................................................................2, 18

---

[*] Authorities upon which Appellants chiefly rely are marked with asterisks.

*In re United States,*
   143 F.4th 411 (D.C. Cir. 2025) ........................................................13

*In re Vitamins Antitrust Class Actions,*
   327 F.3d 1207 (D.C. Cir. 2003) ..................................................9, 22

*Jacobs v. FHFA,*
   908 F.3d 884 (3d Cir. 2018)................................10, 11, 12, 13, 14

*Perry Cap. LLC v. Lew,*
   70 F. Supp. 3d 208 (D.D.C. 2014) ................................................3, 4

*\*Perry Cap. LLC v. Mnuchin,*
   864 F.3d 591 (D.C. Cir. 2017) ...........................4, 9, 10, 11, 12, 13

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,*
   507 U.S. 380 (1993)...............................................................21, 22, 23

*Primrose Dev. Corp. v. Benchmark Acquisition Fund I Ltd. P'ship,*
   45 Va. Cir. 461 (Va. Cir. Ct. Oct. 29, 1998)...........................16, 17

*Robinson v. FHFA,*
   876 F.3d 220 (6th Cir. 2017).....................................................12, 13

*\*Sharpe v. FDIC,*
   126 F.3d 1147 (9th Cir. 1997).............................................10, 12, 15

*Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC,*
   887 F.3d 1003 (10th Cir. 2018).......................................................20

*Strike 3 Holdings, LLC v. Doe,*
   964 F.3d 1203 (D.C. Cir. 2020) ......................................................23

## Statutes

12 U.S.C. § 4617(f)...........................................1, 8, 9, 10, 11, 13, 14, 15

D.D.C. L. Civ. R. 16.5(A)(2)......................................................................21

FED. R. CIV. P. 26(a)(1) ............................................................................24

Housing and Economic Recovery Act of 2008 ("HERA"),
   Pub. L. No. 110-289, 122 Stat. 2654 ..............................................1

## Other Authorities

1 DAN B. DOBBS, LAW OF REMEDIES: DAMAGES – EQUITY – RESTITUTION
   (2d ed. 1993) ..................................................................................16

RESTATEMENT (SECOND) OF CONTRACTS

§ 349 (A.L.I. 1981) ...........................................................4, 5, 18, 19
§ 373 (A.L.I. 1981) ......................................................................16

## GLOSSARY

HERA         Housing and Economic Recovery Act

FHFA         Federal Housing Finance Agency

**STATEMENT CONCERNING ORAL ARGUMENT**

Cross-Appellants respectfully submit that oral argument would aid the Court

in deciding the important legal issues presented in this cross-appeal.

**INTRODUCTION**

Just as the housing market began to recover from the Great Recession, the Federal National Mortgage Association ("Fannie") and the Federal Home Loan Mortgage Corporation ("Freddie") entered an agreement to pay the United States Treasury hundreds of billions of dollars, at the behest of the Federal Housing Finance Agency. A jury concluded that the agreement, which wiped out the entire net worth of the companies each quarter, violated the covenant of good faith and fair dealing contained in the shareholders' contracts. But the jury was unable to award anywhere near the full amount of damages because the district court precluded Plaintiffs from presenting the most accurate and legally appropriate measures of their loss.

The district court first prohibited the presentation of restitution damages to the jury because the court concluded they are barred by the "anti-injunction clause," *Collins v. Yellen*, 594 U.S. 220, 237 (2021), in the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654, 12 U.S.C. § 4501 *et seq*. But that clause only prohibits remedies that "restrain or affect" the FHFA's powers as a conservator of Fannie and Freddie. 12 U.S.C. § 4617(f). An award of money damages under a theory of restitution does neither.

After holding that Plaintiffs could prove only a small subset of their expectation damages with reasonable certainty, the district court also refused to allow Plaintiffs to present their theory of reliance damages. According to the district

1

court, reliance damages were unavailable as a matter of Virginia and Delaware law because a party cannot seek reliance damages in excess of the expectation damages it can reasonably prove. JA 269. But the entire reason that reliance damages exist is to provide an alternative measure of damages when the full extent of expectation damages is too uncertain to calculate. *Glendale Fed. Bank, FSB v. United States*, 378 F.3d 1308, 1313 (Fed. Cir. 2004). To the extent that the district court prohibited Plaintiffs from seeking reliance damages because they allegedly raised the theory too late, the court failed to apply the right rule and misunderstood the relevant facts. Plaintiffs explicitly stated in their initial disclosures that they sought reliance damages, developed the necessary evidence to prove reliance damages, and never waived the right to seek reliance damages. This Court should affirm the jury's verdict holding Defendants liable under the lost-value theory, and remand for a new trial exclusively to determine and, if appropriate, award restitution and reliance damages so Plaintiffs can obtain the full compensation they are owed. *See Camalier & Buckley-Madison, Inc. v. Madison Hotel, Inc.*, 513 F.2d 407, 420 n.94 (D.C. Cir. 1975) (noting that an appellate court can remand for a new trial on "part of the issues" in the case (quoting Fed. R. Civ. P. 59(a))).

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. Plaintiffs filed a timely notice of appeal on April 25, 2025. This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final judgment.

## STATEMENT OF THE ISSUES

1. Whether the anti-injunction clause in HERA prohibited the Plaintiffs from seeking restitution damages.

2. Whether the district court erred in denying the Plaintiffs the ability to seek reliance damages.

## STATUTES AND REGULATIONS

Relevant provisions can be found in the Statutes and Regulations portion Class Plaintiffs' brief.

## STATEMENT OF THE CASE

### I.    Factual Background

In addition to joining the Class Plaintiffs' brief, the Berkley Plaintiffs adopt by reference, pursuant to Rule 28(i), the factual background and all of the arguments in the Class Plaintiffs' brief.

### II.    Procedural Background

Shortly after FHFA forced Fannie and Freddie to agree to the Third Amendment and corresponding Net Worth Sweep that stripped well over $100

billion from the companies' shareholders, two sets of Plaintiffs filed these lawsuits. *Perry Cap. LLC v. Lew (*"*Perry I*"*)*, 70 F. Supp. 3d 208, 214 (D.D.C. 2014). Plaintiffs challenged the Net Worth Sweep on numerous grounds, including as a breach of the implied covenant of good faith and fair dealing. The district court dismissed the complaints in their entirety. *Id.* This Court affirmed in part and reversed in part. *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ("*Perry II*"). Relevant for this appeal, the Court allowed Plaintiffs' claim that Defendants violated the covenant of good faith and fair dealing by agreeing to the Net Worth Sweep to go forward. *Id.* at 626–34.

After the remand, the parties exchanged initial disclosures. Plaintiffs extensively detailed their three theories of damages, explaining that they would seek "the highest of either restitution, expectancy damages, or reliance damages for Defendants' breach." JA 193. Restitution, as Plaintiffs explained, would be an amount equal to "the prices originally paid for . . . junior preferred shares that Plaintiffs own in the Companies." *Id.* Expectancy damages, also called expectation damages, would be "the value" of the shares if "the Net Worth Sweep" never happened. JA 194. And reliance damages would be "the original price of Plaintiffs' shares," minus any loss in value that the Defendants could prove would have occurred if the Net Worth Sweep was never adopted. JA 194.

Both expectancy damages and reliance damages require imagining a world in which the breach never occurred. *See* RESTATEMENT (SECOND) OF CONTRACTS § 349 (A.L.I. 1981). The main difference between the two theories is that the Plaintiff bears the burden of proving what would happen without the breach for expectation damages, but the Defendant bears that burden for reliance damages. *Id.* Given that evidentiary overlap, Plaintiffs disclosed that they would "rely on expert analysis of the information discussed in" the expectancy-damages section of the initial disclosures "to show that Defendants cannot meet their burden" with respect to offsetting reliance damages. JA 194. After Plaintiffs detailed their theories of damages in their initial disclosures, discovery proceeded, followed by cross motions for summary judgment.

In 2022, the district court granted in part and denied in part Defendants' motion for summary judgment concerning, among other things, Plaintiffs' damages theories. Two theories of expectation damages were relevant: (i) the Plaintiffs' loss of future dividends from the enactment of the Net Worth Sweep (the "lost-dividends theory"); and (ii) the drop in the value of Plaintiffs' shares of stock on the date of the Net Worth Sweep's announcement (the "lost-value theory"). JA 255–56. As for the "lost-dividends theory," the court held that damages were too speculative and thus granted summary judgment to Defendants on that theory of harm. JA 250–56. The court ruled that Plaintiffs could, however, pursue their "lost-value" theory of

5

damages. As for restitution damages, the court held they were barred by HERA's anti-injunction clause because they were equitable in nature. JA 256–59.

The district court's summary-judgment ruling came only weeks before the trial was scheduled to begin. JA 264. At that point, the parties had already filed their pretrial statements on the assumption that full expectation damages or restitution damages would be available. Acting diligently, Plaintiffs immediately moved to amend their pretrial statement under Local Rule 16.5 to include reliance damages, JA 264, which they had previously put Defendants on notice of in their initial disclosures, JA 194. Reliance damages, which would "equal the original price of Plaintiffs' shares, plus prejudgment interest including at a minimum interest running from the time of the last dividend received," JA 194, would be calculated using the exact same evidence as restitution damages. The only exception being that Defendants, under a reliance theory, would have the chance to show that the Plaintiffs would have lost some or all of their investment even without the breach of contract. JA 194, 269.

The district court denied Plaintiffs' motion to amend their pretrial statement and thus denied them the ability to present a theory of reliance damages to the jury. JA 271. First, the district court ruled that—despite the theory of reliance damages being disclosed to Defendants four years prior—it would be unfair to Defendants to have to defend against a reliance-damages theory on the eve of trial. JA 269. The

district court also held that reliance damages were unavailable as a matter of law because the reliance damages sought by Plaintiffs would exceed the expectation damages that were reasonably ascertainable under the lost-value theory. JA 269–70. The district court then held a trial on liability and damages on the theory that the Net Worth Sweep caused a drop in stock price. The jury could not reach a verdict, so the district court declared a mistrial and set another trial for six months out.

Because any timing-based prejudice related to reliance damages had evaporated, Plaintiffs moved again to allow the jury to decide reliance damages. JA 608. The district court agreed that its earlier timing-based justification "no longer applie[d]" because the second trial was months away, JA 616–17, but it reiterated its legal conclusion that reliance damages were unavailable when they exceeded reasonably ascertainable expectation damages, JA 617. The Court also held that it would be unfair to allow different evidence in the second trial than the first trial. JA 618.

The court held a second trial, and the jury concluded that the Defendants violated the covenant of good faith and fair dealing. Based on the lost-value theory of harm, the jury returned a verdict totaling $812 million after pre-judgment interest. JA 2351. The district court upheld the verdict against Defendants' post-trial attacks, the Defendants appealed. Plaintiffs cross-appeal, arguing that the district court should have allowed restitution damages and reliance damages.

## SUMMARY OF THE ARGUMENT

This Court should remand for a new trial exclusively on restitution and reliance damages because the district court erroneously excluded these theories.[1] First, the district court should have allowed restitution damages because they would not "restrain or affect" FHFA's powers as conservator. 12 U.S.C. § 4617(f). The district court misread this Court's cases to command that *all* equitable remedies— including those that consist of awards of money damages—are barred. JA 256–57. But this Court has never held that all equitable remedies against Fannie and Freddie are barred by HERA's anti-injunction clause, and the text of that clause says nothing about the distinction between law and equity. Moreover, even if the caselaw does make a distinction between equitable and legal relief, restitution damages are legal under Virginia and Delaware law.

Second, the district court should have allowed Plaintiffs to present proof of reliance damages, which are a standard tool to measure damages when expectation damages are too uncertain to fully prove. Although reliance damages are usually available in these circumstances, the district court held that because Plaintiffs could prove a small fraction of their expectation damages through the lost-value theory, they could not seek their full reliance damages. JA 269–70. But the court

---

[1] Plaintiffs do not appeal the district court's ruling that expectation damages based on a lost-dividend theory of harm were too uncertain to prove.

misconstrued both state precedent and precedent from other federal courts. Likewise, in ruling that Plaintiffs raised this theory too late, the district court applied the wrong legal standard and failed to give appropriate weight to the fact that Plaintiffs disclosed this theory of damages in their initial disclosures and developed the facts needed to prove such damages to a jury.

## STANDARD OF REVIEW

This Court reviews de novo questions of law adjudicated on a motion for summary judgment. *Bauer v. FDIC*, 38 F.4th 1114, 1121 (D.C. Cir. 2022). A district court's trial-management decisions are reviewed for abuse of discretion. *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003).

## ARGUMENT

### I. HERA's Anti-Injunction Clause Does Not Foreclose Restitution Damages.

HERA limits the available remedies when the FHFA is involved in the case. 12 U.S.C. § 4617(f); *see also Perry II*, 864 F.3d at 628. Except in circumstances not relevant here, "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator" of Fannie and Freddie. 12 U.S.C. § 4617(f). This clause generally bars courts from granting injunctions or declaratory judgments against actions taken by FHFA in its capacity as conservator. *Perry II*, 864 F.3d at 606. But the "anti-injunction clause," *Collins*, 594 U.S. at 237,

does not "not prevent . . . judicial review through cognizable actions for damages like breach of contract" because damages do not "restrain or affect" FHFA's powers as a conservator. *Perry II*, 864 F.3d at 614; *Sharpe v. FDIC*, 126 F.3d 1147, 1155 (9th Cir. 1997) (explaining that the similar anti-injunction clause in FIRREA "allows the FDIC to disaffirm or repudiate any contract it deems burdensome and pay only compensatory damages. FIRREA does not permit the FDIC to breach contracts at will.").

The district court ruled that restitution damages would nonetheless violate the anti-injunction clause. First, it reasoned that all equitable remedies "restrain or affect" FHFA's powers within the meaning of HERA's anti-injunction clause. JA 256. Next, it concluded that restitution is equitable in nature under Virginia and Delaware law. JA 258. Thus, restitution was barred under the anti-injunction clause. Both holdings are incorrect.

### A. Monetary Remedies Are Allowed Under The Anti-Injunction Clause Regardless Of Whether They Are Legal Or Equitable.

Whether classified as legal or equitable, a court order requiring Fannie and Freddie to pay money does not "restrain or affect the exercise of powers . . . of the [FHFA] as a conservator." 12 U.S.C. § 4617(f). The district court's interpretation focused on the distinction between legal and equitable remedies, but "[n]othing in" the text of HERA's anti-injunction clause "refers to the type or form of remedy a plaintiff seeks." *Jacobs v. FHFA*, 908 F.3d 884, 895 (3d Cir. 2018). Instead, the anti-

10

injunction clause focuses on the "*effect*" of the requested relief on FHFA's "powers" as a conservator. *Id.* Where the remedy requires Fannie and Freddie to pay a sum of money, the effect of awarding that relief is not to restrain or affect the conservator's exercise of its powers.

This Court, like every other circuit to consider the issue, has already determined that "judicial review through cognizable actions for damages like breach of contract," *Perry II*, 864 F.3d at 614, does not "restrain or affect" FHFA's powers as conservator, 12 U.S.C. § 4617(f). It follows that a remedy requiring Fannie and Freddie to pay money in the same manner as money damages also does not "restrain or affect" its powers as a conservator. *Id*. Writing a check is writing a check, regardless of whether it is for money damages in an action at law or for what the Supreme Court has called "equitable monetary relief." *AMG Cap. LLC v. FTC*, 593 U.S. 67, 70 (2021).

For these reasons, the restitution that Plaintiffs seek—an amount equal to "the prices originally paid for" their shares (plus interest), JA 194—would not "restrain or affect" FHFA's powers as conservator. 12 U.S.C. § 4617(f). If Plaintiffs prevail, all Fannie and Freddie must do is write a check to satisfy the judgment. Doing so would not enjoin, void, or vacate any action taken by FHFA. *Cf. Jacobs*, 908 F.3d at 894. A jury verdict ordering Defendants to pay restitution would, of course, conclude that the Net Worth Sweep violated a contract, but every court to analyze HERA's

11

anti-injunction clause has held that "breach-of-contract claims" are permissible. *Id.* at 895 (collecting cases). The entire purpose of anti-injunction provisions like HERA's is to "allow[]" an agency to "to disaffirm or repudiate any contract it deems burdensome and pay . . . damages." *Sharpe*, 126 F.3d at 1155. These clauses do "not permit the [agency] to breach contracts at will" with no repercussions, such as the legal obligation to pay damages as a result of the breach. *Id.*

The district court nonetheless concluded that all equitable remedies, which it believed included restitution damages, are barred by HERA's anti-injunction clause based on a misreading of this Court's opinion in *Perry II*. There, the Court explained that "[t]he plain statutory text" of HERA's anti-injunction clause "draws a sharp line in the sand against litigative interference—through judicial injunctions, declaratory judgments, or other equitable relief—with FHFA's statutorily permitted actions as conservator." *Perry II*, 864 F.3d at 606. According to the district court, the reference to "other equitable relief" in *Perry II* bars any equitable remedy against Fannie and Freddie during conservatorship. JA 256–57.

That reading is incorrect. *Perry II* only invoked "other equitable relief" after stating that the anti-injunction clause prohibits "litigative interference" with FHFA's conservator powers. 864 F.3d at 606. At most, *Perry II* was saying that "other equitable relief" that constitutes "litigative interference," similar to "injunctions" and "declaratory judgments," is prohibited. *Id.*; *see also Robinson v. FHFA*, 876 F.3d

12

220, 228 (6th Cir. 2017) ("A litigant's claims against Treasury are likewise barred if he or she seeks equitable relief that would restrain or affect FHFA's power as conservator."). Concluding that *Perry II* foreclosed *all* relief characterized as equitable would be strange in a case that involved only "injunctive and declaratory relief designed to unravel FHFA's adoption of the Third Amendment." 864 F.3d at 604. It would also be odd for *Perry II* to make such a sweeping holding without even discussing the fact that "[n]othing in" the anti-injunction clause's text references equitable relief. *Jacobs*, 908 F.3d at 895. The district court simply overread a piece of inapposite dictum about "litigative interference." *Perry II*, 864 F.3d at 606.

The decision to read the anti-injunction clause as erecting a sharp divide between legal and equitable remedies also makes little sense as a practical matter. Some legal remedies would clearly "restrain or affect" FHFA's powers as a conservator, and some equitable remedies would clearly not. The writ of mandamus, for example, has always been a "legal remedy." *Duncan Townsite Co. v. Lane*, 245 U.S. 308, 312 (1917); *see In re United States*, 143 F.4th 411, 440 (D.C. Cir. 2025). Although mandamus is legal in nature, it would "restrain or affect" FHFA's powers as conservator if a court granted against its officer. 12 U.S.C. § 4617(f). Conversely, there are remedies that would not "restrain or affect" any action of FHFA but are still equitable in nature. *Id*. For example, "equitable monetary relief" functions no different than legal "monetary relief." *AMG Cap. LLC*, 593 U.S. at 70. When a court

orders "equitable monetary relief" the important part is the *monetary relief*, not the classification as *equitable*. There is no way to distinguish the "*effect*" on the agency between equitable and legal monetary relief, so there is no reason one would be barred by HERA and the other not. *Jacobs*, 908 F.3d at 895.

To the extent that the district court based its ruling on the fact that restitution would require Plaintiffs to give up their shares, it was mistaken. The court reasoned that because restitution involved "terminat[ing] plaintiffs' shareholder contracts, extinguishing their ownership rights[,] and forcing a reorientation of" Fannie and Freddie's "capital structure," JA 258, it operates like an injunction or declaratory judgment that "restrain[s] or affect[s]" FHFA's powers as a conservator, 12 U.S.C. § 4617(f). But the termination of the Plaintiffs' shareholder contracts and extinguishment of their ownership rights would not "restrain or affect" any of FHFA's powers as a conservator. A judgment extinguishing the rights of the *Plaintiffs* would not require *FHFA* to lift a finger or prohibit it from acting in any way. The only possible change to the companies' capital structures would be to eliminate any further contractual obligations of these companies to Plaintiffs. If anything, the result of Plaintiffs' shares being extinguished would be the government owning a *larger* percentage of Fannie and Freddie, which would obviously not "restrain" FHFA from exercising its powers over the entities. *Id.* Nor would extinguishing the shares

14

"affect" those powers in any way. *Id.* FHFA will still have complete control over Fannie and Freddie after any such judgment is executed.

To be clear, Plaintiffs do not claim that restitution damages and rescission of a breached contract are *always* allowed under the anti-injunction clause. For instance, if the plaintiff seeks to have a contract declared void *ab initio* the result of which would prohibit FHFA from taking an action as conservator, that remedy would likely violate the anti-injunction clause. That is exactly what happened in *Freeman v. FDIC*, 56 F.3d 1394 (D.C. Cir. 1995), under FIRREA's anti-injunction clause. There, plaintiffs sought to rescind a loan agreement with a bank that was in conservatorship as a way to prevent the FDIC, acting as a conservator, from foreclosing on their house. *Id.* at 1398. Because undoing the contract in that situation would "effectively 'restrain' the FDIC from foreclosing on the[] property," this Court held that rescission in that case was barred under a nearly identical provision to HERA's anti-injunction clause. *Id.* at 1399. But Plaintiffs in *this case* seek nothing similar. They just want their money back, and a judgment awarding Plaintiffs money would not inhibit FHFA's conservatorship powers. *See Sharpe*, 126 F.3d at 1155.

## B.    Restitution Damages Are Not Inherently Equitable.

Even if the district court were correct that Congress intended to bar all equitable remedies through HERA's anti-injunction clause, restitution should still be available because it is typically a legal remedy under Delaware and Virginia law. *See*

15

JA 255 (applying Delaware law to claims against Fannie and Virginia law to claims against Freddie).

The "general rule" is that "monetary relief is legal" in nature. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) (cleaned up); RESTATEMENT (SECOND) OF CONTRACTS § 373 (A.L.I. 1981) (describing restitution as a type of money damages). The most prominent treatises on remedies agree, explaining that when a party seeks restitution in the form of a sum of money, the claim is legal. *See*, *e.g.*, 1 DAN B. DOBBS, LAW OF REMEDIES: DAMAGES – EQUITY – RESTITUTION § 4.1(1), at 556 (2d ed. 1993) ("Restitution claims for money are usually claims 'at law.'").

Courts in Delaware and Virginia follow these basic rules. For example, Delaware courts have held that where restitution is sought as "an alternate theory of recovery for a contract claim" and "money damages will make the plaintiff whole, it is a legal claim." *Dickerson v. Vills. of Five Points Prop. Owners Ass'n*, No. 2020-0420, 2020 WL 7251512, at *5 (Del. Ch. Dec. 9, 2020) (cleaned up). Likewise, Virginia courts have explained that "the claim for return of the payments is one cognizable at law." *Primrose Dev. Corp. v. Benchmark Acquisition Fund I Ltd. P'ship*, 45 Va. Cir. 461 (Va. Cir. Ct. May 14, 1998), at *2; *see also Belcher v. Kirkwood*, 383 S.E.2d 729, 730 (Va. 1989). Here, what the Plaintiffs demand is a "return of the payments" they made for their shares in Fannie and Freddie, *Primrose*

16

*Dev. Corp.*, 45 Va. Cir. 461, at *2, as an "alternate theory of recovery" because the full amount of expectation damages were unavailable, *Dickerson*, 2020 WL 7251512, at *5.

The district court disagreed, reasoning that restitution in this case was actually a subset of restitution called "rescission." JA 257. And "recission," as opposed to restitution more broadly, was equitable under Virginia and Delaware law. *See* JA 258 (citing *Devine v. Buki*, 767 S.E.2d 459, 464–65 (Va. 2015); *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 176–78 (Del. 2002)). Although the district court did cite two cases that describe rescission as arising in equity, that is no surprise because claims can fall on either side of the line depending on how they are filed. *See Belcher*, 238 Va. at 432–33 ("Although this case is now a suit in equity, Kirkwood's claims are cognizable at law, even if based on the theory of unjust enrichment."); *Clark v. Teeven Holding Co.*, 625 A.2d 869, 878 (Del. Ch. 1992). Thus, the question is not whether a claim is always legal or equitable, but whether the claim's nature more resembles a legal claim or an equitable claim. And because the "general rule" is that "monetary relief is legal" in nature, *Feltner*, 523 U.S. at 352 (cleaned up), these claims fall on the legal side.

## II.  The District Court Should Have Allowed Plaintiffs To Present Evidence To The Jury Concerning Reliance Damages.

After the district court granted summary judgment foreclosing restitution damages, Plaintiffs moved to supplement their pretrial statement under Local Rule

17

16.5 to add reliance damages as a theory that would be presented to the jury. JA 264. As Plaintiffs explained in their initial disclosures, reliance damages would be equal "the original price of Plaintiffs' shares," minus any loss in value that the Defendants could prove would have occurred if the Net Worth Sweep was never adopted. JA 194. Thus, reliance damages involved the exact same prima facie evidence as the erroneously rejected restitution theory. The district court, however, refused to grant the motion to amend Plaintiffs' pretrial statement because 1) reliance damages were unavailable as a matter of law, and 2) the motion to amend came too close to the trial. JA 268–74. The first holding was a legal error, and the second was an abuse of discretion.

## A. Reliance Damages Are Available When The Full Amount Of Expectation Damages Is Too Uncertain.

A nonbreaching party is normally entitled to be placed in the same position as if the contract had been fulfilled, and the monetary relief required to do this is called expectation damages. *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001). Sometimes, however, events have transpired in a way that makes it impossible to determine how much money the nonbreaching party would have made without the breach. If a plaintiff "cannot prove his profit with reasonable certainty," then he may seek reliance damages to recover the money he invested in reliance on the other side's broken promise. RESTATEMENT (SECOND) OF CONTRACTS § 349, cmt. a; *Glendale*, 378 F.3d at 1313.

18

At summary judgment, the district court ruled that the full amount of Plaintiffs' claimed expectation damages were too uncertain because it was too difficult to determine whether and how Fannie and Freddie would have paid out dividends to the shareholders in absence of the Net Worth Sweep. JA 545. The court only allowed a small portion of the expectation damages—those calculated by the drop in stock price—to go forward. And once the district court ruled out restitution as well, JA 256, Plaintiffs sought reliance damages (essentially the money they spent to purchase the shares plus interest) as the final way to get their money back after the Net Worth Sweep breached the implied covenant of good faith and fair dealing.

Although the paradigmatic use of reliance damages is when the full extent of expectation damages is not quantifiable, *see* RESTATEMENT (SECOND) OF CONTRACTS § 349, the district court ruled that reliance damages were unavailable in this case. The district court concluded that the "courts of Delaware and Virginia" would not allow reliance damages "in excess of . . . ascertainable expectation damages." JA 269–70. And because the Court concluded that a *different* theory of expectation damages—the lost-value theory—could result in damages of up to $1.6 billion dollars, the larger amount of requested reliance damages was excluded as a matter of law. *Id.*

That holding was erroneous. The district court marshaled no authority for the proposition that it must artificially limit the Plaintiffs' reliance damages because the

Plaintiffs can prove only *part* of their claimed expectation damages with reasonable certainty. Doing so would contravene the fundamental principle of reliance damages that the breaching party may not benefit from uncertainty around a damages calculation. "Instead, by choosing to breach the contract, the government chose to shoulder the burden of proof under the reliance theory of damages." *Am. Cap. Corp. v. FDIC*, 472 F.3d 859, 869 (Fed. Cir. 2006).

The authority that the district court *did* rely on is inapposite. Nobody disputes that the "standard remedy in contract cases" under Delaware and Virginia law is "measured by the amount of money that would put the promisee in the same position as if the promisor had performed the contract." JA 270. But Plaintiffs' entire point is that reliance damages exist for situations exactly like this one, where the court determined that the standard measure of damages was too uncertain to fully measure. The district court also relied on out-of-circuit cases holding that *claimed* reliance damages cannot be greater than *claimed* expectancy damages. *See, e.g.*, *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1026 (10th Cir. 2018). But here, the *claimed* damages for both theories was the same: the par value of Plaintiffs' shares. The district court used the small portion of *provable* expectation damages and compared them to the *claimed* reliance damages. This apples-to-oranges comparison has no support in the caselaw or the logic of permitting non-

20

breaching parties to seek reliance damages when the full amount of expectation damages are too uncertain to be proven.

**B.      The District Court Abused Its Discretion By Refusing To Let Plaintiffs Amend Their Pretrial Statement To Include Reliance Damages.**

The district court separately prohibited reliance damages from going to the jury because Plaintiffs moved to amend their pretrial statement to add reliance damages too close to the trial. JA 269. Plaintiffs, however, exercised exceptional diligence in pursuing this theory of damages and easily met the standard to amend their pretrial statement. Local Rule 16.5 governs the amendment of pretrial statements and declares that "[a]mendments to a party's Pretrial Statement shall be permitted for excusable neglect until entry by the Court or magistrate judge of a final Pretrial Order." D.D.C. L. Civ. R. 16.5(a)(2). The Court had not yet entered a final pretrial statement, so the district court should have granted the motion if it found excusable neglect was the reason for amending the statement.

The Supreme Court has pointed to four factors to examine in the reasonable-neglect inquiry: (1) prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for delay, and (4) the good faith of the movant. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). No one factor is dispositive, and the goal of applying these factors is to account for "all relevant circumstances." *Cohen v. Bd. of*

*Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 479 (D.C. Cir. 2016) (citation omitted).

These factors unanimously favor Plaintiffs. First, there was no danger of undue prejudice to Defendants. *Id.* They were notified of the reliance damages theory in Plaintiffs' initial disclosures, which also explained how Plaintiffs would counter the evidence marshalled by Defendants if they tried to offset the damages. JA 194. Moreover, because the district court did not grant summary judgment on the issue of expectation damages until a few weeks before trial, Defendants were surely prepared to argue that Plaintiffs would not have received dividends regardless of the Net Worth Sweep.

The second prong also favors Plaintiffs. They submitted their pretrial statements on August 19, 2022, the district court excluded their primary methods of calculating damages on September 23, 2022, and they moved to amend their pretrial statement on September 28, 2022. JA 262. Thus, only five days after the summary-judgment opinion came down, Plaintiffs moved to amend. Moreover, the district court did not find that either side would need to submit additional evidence, making the "potential impact on judicial proceedings" minimal. *In re Vitamins Antitrust Class Actions*, 327 F.3d at 1209.

The reason for delay was also eminently reasonable. *See Pioneer Inv. Servs. Co.*, 507 U.S. at 395. The pretrial statements were due before the district court ruled

on the summary-judgment motions. Because summary judgment had not been granted to Defendants on the issues of expectation and restitution damages, there was no reason for Plaintiffs to think that they needed to include their backup theory in the statement as well, which would have been wholly redundant at the time. Finally, Plaintiffs' good faith is clear. They moved as soon as they received the summary-judgment order and would have gained nothing by sandbagging.

The district court disagreed, denying the motion for leave to amend without discussing or even citing Local Rule 16.5. JA 268–69. The failure to apply the relevant rule alone constitutes an abuse of discretion. *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1214 (D.C. Cir. 2020). Instead of applying Local Rule 16.5, the district court broadly gestured at the fact that allowing the jury to hear about reliance damages would prejudice Defendants. JA 269. According to the district court, Defendants had "little reason to develop a trial argument as to why any reliance damages should be offset" and making them attempt to do so now would constitute prejudice. JA 269. But even if one understands the district court to be applying the first factor of the reasonable-neglect test, *Pioneer Inv. Servs. Co.*, 507 U.S. at 395, its reasoning made limited sense.

Plaintiffs pursued their reliance theory as an alternative measure of damages from their initial disclosures onward. JA 194. The initial disclosures were not shy about reliance damages either, explaining over two paragraphs precisely how

23

Plaintiffs would prove them. JA 194. The Federal Rules of Civil Procedure require only notice of the methodology to calculate damages in the initial disclosures under Rule 26(a)(1). Fed. R. Civ. P. 26(a)(1). There is no obligation to reaffirm that a party continues to seek that same theory of damages. Yet the district court created such a requirement. And to the extent that it matters, Plaintiffs *did* develop the necessary evidence to submit this theory to the jury. They possessed ample evidence to demonstrate how much they paid for the shares, and their expert witness, Dr. Mason, included this analysis in his report. True, the report labelled it as "restitution," but as the district court concluded, there was no difference in the calculation. JA 268–69.

Even when given an opportunity to correct its mistake, the district court doubled down. After the first trial ended with a hung jury, the Berkley Plaintiffs moved once again to present reliance damages to the jury. JA 607. The court acknowledged that its timing-based reason to deny the motion to amend under Local Rule 16.5 no longer applied, but it held that, as a matter of "trial-management discretion" it would refuse to let the Plaintiffs present reliance damages. JA 618. The district court felt it would be "fundamentally unfair to defendants to require the presentation of evidence and arguments on an entirely new and substantial issue at the second trial simply because the jury hung at the first." JA 618. But the idea that the issue of reliance damages being "entirely new" is demonstrably incorrect, as they were thoroughly disclosed and developed in discovery. JA 194. And, as the court

acknowledged, the reason that reliance damages were disallowed in the first trial was the alleged unfairness to Defendants to have to prepare for them on (alleged) short notice. But that factor obviously "no longer applie[d]," JA 617, so it was an abuse of discretion for the district court to rely on it.

## CONCLUSION

This Court should affirm the judgment with respect to liability and the lost-value theory of damages but remand for a new trial to determine and, if appropriate, award restitution and reliance damages.

Dated: November 6, 2025                  Respectfully Submitted,

                                         /s/ David H. Thompson
                                         David H. Thompson
                                         (DC Bar No. 450503)
                                         Brian W. Barnes
                                         (DC Bar No. 1018419)
                                         John D. Ramer
                                         (DC Bar No. 90002236)
                                         COOPER & KIRK, PLLC
                                         1523 New Hampshire Avenue, NW
                                         Washington, D.C. 20036
                                         (202) 220-9659
                                         (202) 220-9601 (fax)
                                         dthompson@cooperkirk.com
                                         bbarnes@cooperkirk.com
                                         jramer@cooperkirk.com

*Attorneys for Plaintiffs-Appellees/Cross-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the foregoing brief contains 5,880 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

Dated: November 6, 2025                    *s/ David H. Thompson*
                                           David H. Thompson

26

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2025, I caused the foregoing document to be electronically filed using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 6, 2025                    _s/ David H. Thompson_
                                           David H. Thompson