ORAL ARGUMENT SCHEDULED FOR APRIL 21, 2026
NO. 25-5113 (CONSOLIDATED WITH NOS. 25-5121, 25-5154, 25-5155)

# In The United States Court of Appeals for the District of Columbia Circuit

FAIRHOLME FUNDS, INC, ON BEHALF OF ITS SERIES, THE FAIRHOLME FUND, *et al*.,

*Plaintiffs-Appellees*,

*v.*

FEDERAL HOUSING FINANCE AGENCY, IN ITS CAPACITY AS CONSERVATOR OF THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION, *et al*.,

*Defendants-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA NOS. 13-CV-1053, 13-MC-1288 (HON. ROYCE C. LAMBERTH)

**PLAINTIFFS' CROSS-APPEAL REPLY BRIEF**

David H. Thompson
Brian W. Barnes
John D. Ramer
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Berkley Plaintiffs-Appellees/Cross-Appellants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

I. HERA's "Anti-Injunction" Clause Does Not Bar Restitution in This Case. ........ 2

II. The District Court Erred in Refusing to Let the Jury Rule on Reliance Damages. ........ 9

A. Reliance Damages Are Available When a Plaintiff Can Show It Was Harmed but Cannot Prove the Extent of Its Harm. ........ 9

B. The District Court Abused Its Discretion by Refusing to Allow Evidence Related to Reliance Damages. ........ 11

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Acuar v. Letourneau*,
260 Va. 180 (2000) ....................8

*Admiral Fin. Corp. v. United States*,
378 F.3d 1336 (Fed. Cir. 2004) ....................11

*Am. Cap. Corp. v. FDIC*,
472 F.3d 859 (Fed. Cir. 2006) ....................9

*Collins v. Yellen*,
594 U.S. 220 (2021) ....................2

*District of Columbia v. Air Fla., Inc.*,
750 F.2d 1077 (D.C. Cir. 1984) ....................8

*Freeman v. FDIC*,
56 F.3d 1394 (D.C. Cir. 1995) ....................6, 7

*Glendale Fed. Bank, FSB v. United States*,
378 F.3d 1308 (Fed. Cir. 2004) ....................9

*In re Vitamins Antitrust Class Actions*,
327 F.3d 1207 (D.C. Cir. 2003) ....................12

*Perry Capital LLC v. Mnuchin*,
864 F.3d 591 (D.C. Cir. 2017) ....................1, 2, 3, 4, 5, 6, 7

*Rapaport v. U.S. Treasury, Office of Thrift Supervision*,
59 F.3d 212 (D.C. Cir. 1995) ....................8

*Rufus v. Ramsey*,
No. Civ.A.03A-09-005HDR, 2004 WL 838612 (Del. Super. Ct. Apr. 13, 2004) ....................7

*Schickling v. Aspinall*,
235 Va. 472 (1988) ....................8

*Sharpe v. FDIC*,
126 F.3d 1147 (9th Cir. 1997) ....................3, 5

*Strike 3 Holdings, LLC v. Doe*,
964 F.3d 1203 (D.C. Cir. 2020) ....................13

*United States v. Delgado–Garcia*,
374 F.3d 1337 (D.C. Cir. 2004) ....................12

*United States v. Vontsteen*,
950 F.2d 1086 (5th Cir. 1992)....................13

*Waterview Mgmt. Co. v. FDIC*,
105 F.3d 696 (D.C. Cir. 1997)....................7

**Statutes**

12 U.S.C. § 4617(f)....................2, 4

**Other Authorities**

RESTATEMENT (SECOND) OF CONTRACTS § 349....................9

## INTRODUCTION

The District Court should have permitted Plaintiffs to present the full measure of their damages to the jury. As Defendants now admit, whether a remedy (such as restitution) is "label[ed]" as legal or equitable is irrelevant in determining whether the Housing and Economic Recovery Act's ("HERA") anti-injunction clause applies. Appellants' Resp. & Reply Br., at 4-5, 34-38 (Jan. 9, 2026) ("Appellants' Resp. & Reply Br."). Given this concession and the fact that restitution in this case is indistinguishable from the money-damages awards that this Court has already blessed in *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 614 (D.C. Cir. 2017) ("*Perry II*"), the District Court's grant of summary judgment must be vacated.

Even if restitution were unavailable, the District Court erred by not allowing Plaintiffs to present reliance damages to the jury. Reliance damages are available when a plaintiff is harmed by the breach of contract but cannot with reasonable certainty prove the full amount of its expectation damages, which are the amount of money the plaintiff would have received without the breach. Plaintiffs in this case showed they were harmed by the Net Worth Sweep but were not permitted to prove the full sum of their expectation damages. Yet the District Court ruled that reliance damages were unavailable because Plaintiffs could (and ultimately did) show *some* expectation damages with reasonable certainty. This novel holding finds no support in the caselaw. The District Court's alternative holding that the reliance-damages

request was raised too late both neglected the relevant legal standard and ignored the role that the District Court's late summary-judgment ruling played in causing reliance damages to be omitted from the pretrial statement.

## I. HERA's "Anti-Injunction" Clause Does Not Bar Restitution in This Case.

HERA's "anti-injunction clause," *Collins v. Yellen*, 594 U.S. 220, 237 (2021), does not absolve Defendants of the obligation to pay restitution for breaching their implied covenant of good faith and fair dealing. Restitution, which would require Defendants to pay a sum of money and for Plaintiffs' shares to be extinguished,[1] would not "restrain or affect" FHFA's powers as conservator of Fannie and Freddie. 12 U.S.C. § 4617(f). Although the District Court concluded that restitution was unavailable in this case because it is equitable in nature, JA 256–59, Defendants have essentially declined to defend that position on appeal. Instead, they concede that "[i]t is the remedy's practical impact—not its label—that controls" whether the anti-injunction clause applies. Appellants' Resp. & Reply Br. at 4, 35.

This concession shows why the District Court's grant of summary judgment must be vacated. In *Perry II*, this Court held that HERA's anti-injunction clause does "not prevent . . . judicial review through cognizable actions for damages like breach

[1] Defendants use the term "rescission" instead of "restitution" but agree that the two terms are often used interchangeably. Appellants' Resp. & Reply Br. at 33. Although the parties use different terms, they agree that what Plaintiffs demand is a sum of money in exchange for Plaintiffs' shares being extinguished.

of contract." 864 F.3d at 614. That ruling was unremarkable because courts have always interpreted this kind of anti-injunction clause to allow a conservator to renounce its obligation to perform under contracts and instead pay "compensatory damages" for its breach. *Sharpe v. FDIC*, 126 F.3d 1147, 1155 (9th Cir. 1997) (interpreting an identical clause in FIRREA).

Restitution is no different than "compensatory damages" when it comes to affecting or restraining FHFA's powers as a conservator. *Perry II*, 864 F.3d at 614. As Plaintiffs have explained, restitution in this case would require Defendants to pay a sum of money because they breached the covenant of good faith and fair dealing. The "practical impact" of paying a sum of money is the same, Appellants' Resp. & Reply Br. at 4, 35, regardless of whether it is paid under a theory of restitution or a different theory of damages. And the fact that restitution would *relieve* Defendants of contractual obligations owed to Plaintiffs does not paradoxically *restrain* FHFA's powers as conservator.

Defendants' main argument is to fight the premise that damages are available when Fannie and Freddie breach a contract. They argue that *Collins v. Yellen* impliedly abrogated *Perry II*'s holding that compensatory "damages [for] breach of contract" are permissible under the anti-injunction clause, 864 F.3d at 614, when *Collins* stated that the clause "sharply" restricts judicial review, Appellants' Resp. & Reply Br. at 3-4, 34-35.

*Collins* did not abrogate *Perry II*'s conclusion that "actions for damages" are permitted under the anti-injunction clause. 864 F.3d at 614. *Collins* merely recognized that prohibiting injunctive relief and vacatur under the APA is a significant curtailment of the federal courts' powers. There is nothing inconsistent between *Perry II* acknowledging that damages actions were allowed and *Collins* acknowledging that the clause nonetheless sharply constrains the remedial powers of the federal courts.

Defendants also argue that even if *Perry II*'s damages holding survived *Collins*, restitution is still barred because it involves more than just paying a sum of money. *See* Appellants' Resp. & Reply Br. at 38-39. Defendants contend that three features of restitution would each "restrain or affect" FHFA's powers as conservator. 12 U.S.C. § 4617(f). Because restitution would "unwind the shareholder contracts, compel distributions of [Fannie and Freddie's] assets, and alter the [Fannie and Freddie's] capital structure," Defendants claim it would violate the anti-injunction clause. Appellants' Resp. & Reply Br. at 33. But they fail to explain how any of these results would "affect or restrain" FHFA's powers as a conservator.

First, relieving Defendants of the contractual duties they owe via Plaintiffs' shares in Fannie and Freddie would not restrain or affect FHFA's powers as conservator over those institutions. Regardless of whether Plaintiffs continue to possess shares in Fannie and Freddie, FHFA will continue to control the entities.

Abrogating Defendants' contractual obligations to Plaintiffs going forward would *relieve* them of legal obligations, not restrain or affect FHFA's exercise of its conservatorship powers.

Second, "compel[ling] distributions of [Fannie & Freddie's] assets" would not restrain or affect FHFA's powers as a conservator. Appellants' Resp. & Reply Br. at 33. What Defendants object to here is that restitution will require them to pay money to satisfy the judgment. When a court orders a defendant to pay damages, after all, it is "compel[ling] distributions" of assets from the defendant. *Id.* As this Court has already explained, however, a court may properly "compel distributions," *id.*, of defendants' assets for a "breach of contract," *Perry II*, 864 F.3d at 614. FHFA as conservator may "disaffirm or repudiate any contract it deems burdensome and pay only compensatory damages," but the statute does not entitle the agency "to breach contracts at will" and leave contracting parties with no recourse. *Sharpe*, 126 F.3d at 1155.

Third, "alter[ing]" the capital structure of Fannie and Freddie by extinguishing Plaintiffs' shares would not restrain or affect FHFA's powers as a conservator. Defendants do not even attempt to explain why the "practical impact" of eliminating Defendants' contractual relationship with Plaintiffs going forward would restrain or affect FHFA's powers as a conservator.

*Freeman v. FDIC*, 56 F.3d 1394, 1398-99 (D.C. Cir. 1995), does not change the analysis. In that case, the FDIC, acting as a receiver, sought to foreclose on the plaintiffs' home, and the plaintiffs sued to stop the foreclosure. *Id.* at 1398. One theory for why the foreclosure could not proceed was that the plaintiffs' underlying loan agreement with the bank in receivership should be rescinded. *Id.* at 1397-98. This Court held that recission and an accompanying declaratory judgment in that case would have "effectively restrain[ed] the FDIC from foreclosing on their property." *Id.* at 1399. (cleaned up). Because the requested judgment would stop the FDIC from exercising a power as receiver, the anti-injunction clause in FIRREA barred it.

*Freeman* is inapposite because this suit will not prevent FHFA from exercising any power as conservator. In *Freeman*, recission of the underlying loan agreement would have prohibited the FDIC from exercising a power as conservator of the insolvent bank (*i.e.*, foreclosing on a property). *Id.* A payment of restitution and the judicial dissolution of the Plaintiffs' shares in this case, however, would not prevent FHFA from taking any action as a conservator. Notably, Plaintiffs do not request that the Court "unravel," void, vacate, enjoin, or otherwise inhibit "FHFA's adoption of the Third Amendment." *Perry II*, 864 F.3d at 604. Restitution would only require Fannie and Freddie to pay "compensatory damages" for the harm they caused the

shareholders, and, in turn, Plaintiffs' shares would be eliminated.[2] *Id.* at 619. If anything, *Freeman* confirms that the anti-injunction clause cannot be read too narrowly: "serious due process concerns would be implicated" if the anti-injunction clause left parties without any recourse. *Freeman*, 56 F.3d at 1399; *Waterview Mgmt. Co. v. FDIC*, 105 F.3d 696, 701 (D.C. Cir. 1997) (explaining that extinguishing "pre-receivership rights" without compensation "raises significant constitutional questions under the takings clause").

In addition to their argument that the anti-injunction clause bars restitution, Defendants argue that reliance damages would grant an impermissible windfall to Plaintiffs. Appellants' Resp. & Reply Br. at 40. The District Court did not rule on this argument, and this Court should not decide in the first instance whether granting restitution would constitute an inequitable windfall. The "normal rule" when

[2] Given Defendants' agreement that the "label" of legal or equitable is "academic," Plaintiffs do not dedicate a significant portion of this brief to whether restitution is legal or equitable under Virginia and Delaware law. To the extent that the distinction may be relevant, restitution is primarily legal in nature, as explained in Plaintiffs' opening cross-appeal brief. Pls. Principal Cross-Appeal Br., Doc. 2144235 at 15-17 (Nov. 6, 2025). Although restitution "involves equitable considerations," it is generally awarded "in the form of a money judgment." *Rufus v. Ramsey*, No. Civ.A.03A-09-005HDR, 2004 WL 838612, at *2 (Del. Super. Ct. Apr. 13, 2004). Defendants cite various restatements to argue that "the unwinding of performance" must be "both feasible and equitable." Appellants' Resp. & Reply Br. at 40 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 54 cmt. a). But that principle is perfectly consistent with the fact that restitution involves "equitable considerations" despite not actually arising in equity. *Rufus*, 2004 WL 838612, at *2.

vacating a judgment on one ground is to remand so that any issues "no[t] passed upon by the District Court" can be decided there in the first instance. *District of Columbia v. Air Fla., Inc.,* 750 F.2d 1077, 1085 (D.C. Cir. 1984).

This Court should also not conclude that restitution would result in an improper windfall because there would be no such windfall. As a factual matter, an award of restitution in this case would not cause a windfall but prevent one. The Third Amendment's Net Worth Sweep resulted in $153 billion being improperly diverted to the Treasury, to the detriment of Fannie and Freddie's investors. That number pales in comparison to the $28.1 billion plus prejudgment interest that Defendants would be required to pay in restitution. *Id.* "Restitution is measured by the defendant's unjust enrichment, not by the plaintiff's loss." *Rapaport v. U.S. Treasury, Office of Thrift Supervision*, 59 F.3d 212, 217 (D.C. Cir. 1995). If anyone received a windfall here, it is the United States, which facilitated billions of dollars of investment into Fannie and Freddie only to pull the rug out from investors once they were poised to right the ship. So even if there was some sort of windfall to the Plaintiffs, the Court would have to balance that windfall against the windfall to the government, and "[t]o the extent that" it is necessary to grant a windfall to someone "the victim of the wrong rather than the wrongdoer should receive the windfall." *Acuar v. Letourneau*, 260 Va. 180, 193 (2000); *Schickling v. Aspinall*, 235 Va. 472, 475 (1988) (same).

## II. The District Court Erred in Refusing to Let the Jury Rule on Reliance Damages.

### A. Reliance Damages Are Available When a Plaintiff Can Show It Was Harmed but Cannot Prove the Extent of Its Harm.

Reliance damages are available when a plaintiff was harmed by a breach of contract but cannot prove how much money it would have received without the breach. *See* RESTATEMENT (SECOND) OF CONTRACTS § 349, cmt. a; *Glendale Fed. Bank, FSB v. United States*, 378 F.3d 1308 (Fed. Cir. 2004). Otherwise, a breaching defendant could benefit from uncertainty around the damages calculation, even if the factfinder could conclude with certainty that *some* harm occurred. *See Am. Cap. Corp. v. FDIC*, 472 F.3d 859, 869 (Fed. Cir. 2006).

This case fits the mold of when reliance damages are available. Defendants' breach of the implied covenant of good faith and fair dealing harmed Plaintiffs. Indeed, the jury *agreed* that the Net Worth Sweep harmed them and awarded hundreds of millions of dollars. JA 2351. But Plaintiffs could not show the full extent to which they would have made money without the Net Worth Sweep because the District Court held it was too speculative that Fannie and Freddie would have exited conservatorship and begun paying dividends again. JA 250–56. In other words, Plaintiffs demonstrated harm but could not demonstrate the total amount of harm they suffered.

The District Court and Defendants disagree with this straightforward analysis by attempting to segregate the theories of harm for reliance-damages purposes. They argue that because the lost-dividends theory could not be proven to a sufficient degree of specificity but the damages based on the lost-value could be proven means that reliance damages are categorically unavailable. JA 269–70; Appellants' Resp. & Reply Br. at 40. But they provide no support for the proposition that a plaintiff who is harmed, and whose harm is not fully ascertainable, can be deprived of the ability to seek reliance damages because a small portion of their overall expectancy damages can be calculated to a reasonable degree. Instead, they rely on cases that hold when expectation damages are *completely* ascertainable, the plaintiff cannot recover reliance damages. *See* Appellants' Resp. & Reply Br. at 46 n.8 (collecting inapposite cases). They cannot cite a case that holds a plaintiff who has proved it was harmed is nonetheless barred from recovering reliance damages because it can prove part of its total damages based on a different theory.[3]

---

[3] Defendants argue that this Court should rule that reliance damages would constitute an impermissible windfall. Appellants' Resp. & Reply Br. at 48-49. But the District Court did not pass on that argument, and a court could not conclude that reliance damages would constitute a windfall without actually knowing the amount of reliance damages.

**B. The District Court Abused Its Discretion by Refusing to Allow Evidence Related to Reliance Damages.**

The District Court's alternative ground for prohibiting Plaintiffs from presenting evidence of reliance damages to the jury—untimeliness—was also flawed. Plaintiffs raised reliance damages at every necessary point in the litigation. Plaintiffs explicitly sought reliance damages in their initial disclosures. This was not a mere aside or quick reference. Plaintiffs included two paragraphs that explained what reliance damages were, what evidence would be used to calculate them, and Plaintiffs' plan to "rely on expert analysis of the information discussed" in the rest of the initial disclosures. JA 194.

Because the District Court did not resolve the cross motions for summary judgment until after pretrial statements were due, Plaintiffs had no reason to believe that they would need to present evidence (which they possessed) about reliance damages to the jury. Restitution and expectancy damages, which were still part of the case, would have been more than sufficient. *Admiral Fin. Corp. v. United States*, 378 F.3d 1336, 1344 (Fed. Cir. 2004) (describing reliance damages as a "second-best" alternative). Once the District Court ruled out restitution and limited expectancy damages to only a portion of the harm, JA 234, Plaintiffs moved within five days to amend their pretrial statement to include reliance damages, *see* Pls.' Mot. to Amend Pretrial Statement (ECF No. 201). Because their expert reports already included the calculations necessary to establish reliance damages, Plaintiffs

did not need to submit any additional evidence. They nonetheless offered to allow Defendants to submit an additional expert report to attempt to "prove that Plaintiffs' shares would have lost value absent Defendants' breach of the implied covenant of good faith and fair dealing," even though they had notified Defendants years ago that they may need to offset reliance damages. JA 194 (initial disclosures). Defendants appear to claim that they were surprised by the reliance damages theory because any reference to reliance damages was "omitted" "in response to Defendants' summary judgment motion." Appellants' Resp. & Reply Br. at 49-50. But *Defendants* did not move for summary judgment on reliance damages, so Plaintiffs had no obligation to raise the issue *sua sponte*.

Given that reliance damages were always part of the case and the District Court's failure to rule on the summary-judgment motions before pretrial disclosures were due, Plaintiffs easily satisfied the standard under Local Rule 16.5 to amend their disclosures. *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003).

Defendants do not dispute that Local Rule 16.5 governed the motion but argue that the District Court's failure to apply it should be excused because Plaintiffs did not cite it in their motion to amend. But that argument fails because the legal standard against which to evaluate a motion is not waivable or forfeitable. *See United States v. Delgado-Garcia,* 374 F.3d 1337, 1341 (D.C. Cir. 2004) (declining to accept

Government's concession that an issue was subject to *de novo* review); *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) ("[N]o party has the power to control our standard of review." (emphasis in original)). The failure to apply the right legal standard was reversible error. *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1214 (D.C. Cir. 2020).

Dated: February 20, 2026

Respectfully Submitted,

/s/ *David H. Thompson*
David H. Thompson
(DC Bar No. 450503)
Brian W. Barnes
(DC Bar No. 1018419)
John D. Ramer
(DC Bar No. 90002236)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
(202) 220-9659
(202) 220-9601 (fax)
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Attorneys for Plaintiffs-Appellees/Cross-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the foregoing brief contains 2,971 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Times New Roman font.

Dated: February 20, 2026

*s/ David H. Thompson*
David H. Thompson

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2026, I caused the foregoing document to be electronically filed using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 20, 2026

*s/ David H. Thompson*
David H. Thompson