No. 25-5113 (consolidated with Nos. 25-5121, 25-5154, 25-5155)

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

FAIRHOLME FUNDS, INC, ON BEHALF OF ITS SERIES, THE FAIRHOLME FUND, *et al*,

*Plaintiffs-Appellees*,

*v.*

FEDERAL HOUSING FINANCE AGENCY, IN ITS CAPACITY AS CONSERVATOR OF THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court for the District of Columbia
Nos. 13-cv-1053, 13-mc-1288 (Hon. Royce C. Lamberth)

# RESPONSE TO APPELLANTS' REHEARING PETITION

Hamish P.M. Hume
Samuel C. Kaplan
David Lehn
BOIES SCHILLER FLEXNER LLP
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727

Eric L. Zagar
KESSLER TOPAZ
MELTZER & CHECK, LLP
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706

Michael J. Barry
GRANT & EISENHOFER, P.A.
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000

Adam Wierzbowski
Robert Kravetz
BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400

*Counsel for Appellee Class*

October 1, 2026

David H. Thompson
Brian W. Barnes
John D. Ramer
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
Tel: (202) 220-9659
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Berkley Plaintiffs-Appellees/Cross-Appellants*

**TABLE OF CONTENTS**

GLOSSARY ....................................................................................................v

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................3

I. THE PANEL'S MERITS RULINGS ARE CORRECT AND CONSISTENT WITH *COLLINS*. .......................................................................3

A. The Panel Correctly Held That, as a Matter of State Law, the Implied Covenant Applied to FHFA's Exercise of Discretion in Agreeing to the Sweep. .........................................................4

1. The Panel Correctly Held the Implied Covenant Applied to FHFA's Decision. ....................................................5

2. This State-Law Issue Does Not Warrant En Banc Review. ...................................................................8

B. *Collins* Did Not Address Whether FHFA Complied With the Implied Covenant. ......................................................8

II. THE PANEL'S DECISION THAT THE CLAIM IS NOT BARRED BY §4617(f) IS CORRECT AND CONSISTENT WITH *COLLINS* AND *JACOBS*. ..................12

CONCLUSION ...........................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Ambase Corp. v. United States*,
61 Fed. Cl. 794 (2004) .......................................................... 14

*Blaustein v. Lord Baltimore Capital Corp.*,
84 A.3d 954 (Del. 2014) .......................................................... 7

*Calumet Cap. Partners LLC v. Victory Park Cap. Advisors, LLC*,
353 A.3d 88 (Del. Ch. 2026) .......................................................... 5

*Collins v. Yellen*,
594 U.S. 220 (2021) ............................ 3, 4, 5, 8, 9, 10, 11, 12, 13, 15, 16

*Cygnus Opportunity Fund, LLC v. Wash. Prime Grp., LLC*,
302 A.3d 430 (Del. Ch. 2023) .......................................................... 5

*Freeman v. FDIC*,
56 F.3d 1394 (D.C. Cir. 1995) .......................................................... 13, 14

*Hindes v. FDIC*,
137 F.3d 148 (3d Cir. 1998) .......................................................... 13

*In re Air Crash Disaster*,
821 F.2d 1147 (5th Cir. 1987) .......................................................... 8

*Jacobs v. FHFA*,
908 F.3d 884 (3d Cir. 2018) .......................................... 13, 14, 15, 17

*Johnson & Johnson v. Fortis Advisors LLC*,
352 A.3d 229 (Del. 2026) .......................................................... 5, 11

*Khan v. Warburg Pincus, LLC*,
2025 WL 1251237 (Del. Ch. Apr. 30, 2025) .................................... 6, 7

*King v. Palmer*,
778 F.2d 878 (D.C. Cir. 1985) .......................................................... 11

*Lamar, Archer & Cofrin, Llp v. Appling*,
584 U.S. 709 (2018) .......................................................... 14

*Multicultural Media, Telecom & Internet Council v. FCC*,
873 F.3d 932 (D.C. Cir. 2017) ....................10

*National Pork Producers Council v. Ross*,
598 U.S. 356 (2023)....................16

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) ....................11

*Perry Capital LLC v. Mnuchin*,
864 F.3d 591 (D.C. Cir. 2017) .................... 3, 4, 15, 17

*Policemen's Annuity & Benefit Fund of Chicago v. DV Realty Advisors LLC*,
2012 WL 3548206 (Del. Ch. Aug. 16, 2012) ....................7

*Sharpe v. FDIC*,
126 F.3d 1147 (9th Cir. 1997)....................13

**Statutes**

12 U.S.C. §1821....................13

12 U.S.C. §4617....................3

5 U.S.C. §706....................10

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| Companies | Fannie Mae and Freddie Mac |
| Defendants | FHFA, Fannie Mae, and Freddie Mac |
| Defs.Br. | Brief for Appellants, Case No. 25-5113 (D.C. Cir.), Dkt. No. 2134751 |
| Fannie Mae | Federal National Mortgage Association |
| Freddie Mac | Federal Home Loan Mortgage Corporation |
| FIRREA | Financial Institutions Reform, Recovery, and Enforcement Act |
| FHFA | Federal Housing Finance Agency |
| HERA | Housing and Economic Recovery Act of 2008 |
| Op. | Opinion, Case No. 25-5113 (D.C. Cir.), Dkt. No. 2184921 |
| Pet. | Petition for Panel Rehearing or Rehearing En Banc, Case No. 25-5113 (D.C. Cir.), Dkt. No. 2191966 |
| Pls.Br. | Plaintiffs' Corrected Response Brief, Case No. 25-5113 (D.C. Cir.), Dkt. No. 2144426 |
| Plaintiffs | Class Plaintiffs-Appellees and Berkley Plaintiffs (as defined in Plaintiffs' Certificate as to Parties, Rulings, and Related Cases contained in Pls.Br.) |
| Sweep | Net Worth Sweep (as defined in Pls.Br. at 9) |

## INTRODUCTION

The Court should deny the petition for the reasons set forth in the Argument below. But to ensure an accurate understanding of context, we first address a few framing points from Defendants.

First, Defendants repeatedly suggest that FHFA's decision to agree to the Sweep was made in response to the national "financial crisis." Pet.1. That is incorrect. The decision was made in August 2012, when the housing market had recovered and the Companies were starting to generate record profits. Op.25; Pls.Br.7-9. A June 2012 memo records the FHFA Director saying there was "no urgency" to make any potential change to Treasury's dividend since the Companies "will be generating large revenues over the coming years, thereby enabling them to pay the 10% annual dividend well into the future …." JA2575. A Treasury email a month later confirmed the Sweep was not motivated by any crisis, but by the fact that the Companies were generating profits above the 10% Treasury dividend amount, thus rebuilding capital for the first time since 2008—which Treasury preferred not to happen. JA2906; *see also* JA2954. Thus, Defendants' argument that the judgment will chill agency decision-making in a future "crisis" is a meritless scare tactic. The judgment merely protects private contractual rights and reasonable contractual expectations. Pls.Br.9-12, 22-25.

Second, Defendants fail to acknowledge the private interests at stake here. The preferred-shareholder classes invested over $33 billion into the Companies—$19 billion of which was at the behest of regulators during the *actual* financial crisis in 2007-08. Pls.Br.5. As of the time of the conservatorship, they had received relatively little in return on that investment. *Id.* But they had received their shareholder contracts. Guided by jury instructions Defendants have not challenged on appeal, a unanimous jury found Defendants breached the implied covenant in those contracts by agreeing to the Sweep, which converted Treasury's 10% dividend into a dividend of 100% of all net worth and profits of the Companies in perpetuity. In the first year it took effect, that Sweep transferred over $111 billion more to Treasury than the 10% dividend would have. JA1219-21. As of trial, it had caused Treasury to receive over $395 billion in value, JA878, more than doubling Treasury's investment in the Companies. The $812 million judgment in favor of the shareholder-classes must be understood in this overall context.

Third, Defendants assert that shareholders "would have lost the complete value of their shares in 2008 if Congress had not enacted HERA." Pet.2. Not only is that irrelevant to the issues here, there also was no proof or findings as to what would have happened without the conservatorships. What was proven is that if FHFA had not agreed to the Sweep, shareholders would own stock in Companies

that would have well over $150 billion more in assets than they currently have, and would not have been permanently alienated from the Companies' profits and capital. Pls.Br.9-10.

## ARGUMENT

### I. THE PANEL'S MERITS RULINGS ARE CORRECT AND CONSISTENT WITH *COLLINS*.

In *Collins v. Yellen*, 594 U.S. 220 (2021), the Supreme Court rejected an APA claim seeking to invalidate the Sweep. 594 U.S. at 237-42. Defendants say that decision "materially altered the legal framework under which this Court allowed the implied covenant claim" to proceed—i.e., the decision in *Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017), on which the panel relied in affirming the judgment below. Pet.2. Defendants are wrong. *Collins* had nothing to do with an implied-covenant claim, as the panel recognized. Op.15-16.[1]

*Perry* held that APA challenges to the Sweep were barred by 12 U.S.C. §4617(f)—often called HERA's "anti-injunction" provision—because the Sweep fell "squarely within [FHFA's] statutory authority" under §4617(b)(2)(J)(ii), which is an "expansive grant[] of permissive, discretionary authority" for FHFA to do what it "determines is" in "the public and governmental interests," even if to the

[1] All quotations omit citations and immaterial punctuation unless otherwise indicated.

Companies' and shareholders' detriment. 864 F.3d at 607, 613. Yet, *Perry* simultaneously held that HERA did *not* foreclose Plaintiffs' implied-covenant claim, which *Perry* remanded to be evaluated "under the correct legal standard, namely, whether the [Sweep] violated the reasonable expectations of the parties." *Id.* at 630-32.

Four years later, the Supreme Court reached the same result as *Perry* on the APA claims. *Collins* held: "FHFA did not exceed its authority as a conservator, and therefore the anti-injunction clause bars the shareholders' statutory [i.e., APA] claim." 594 U.S. at 242. *Collins*' reasoning was the same as *Perry*'s. *Compare Collins*, 594 U.S. at 237-42, *with Perry*, 864 F.3d at 604-15. *Collins* said nothing whatsoever about any contract claim, let alone an implied-covenant claim, because no such claim was before it. The panel correctly recognized this. Op.15-16.

Regardless of the relationship between *Collins* and *Perry*, however, nothing in *Collins* foreclosed Plaintiffs' implied-covenant claim, as explained presently.

### A. The Panel Correctly Held That, as a Matter of State Law, the Implied Covenant Applied to FHFA's Exercise of Discretion in Agreeing to the Sweep.

Defendants argue that because *Collins* held that HERA gave FHFA broad discretion to agree to actions like the Sweep, there was "no contractual gap for the implied covenant to fill." Pet.8. This issue does not merit rehearing because the panel's decision was correct, and because the issue is entirely one of state law.

1. *The Panel Correctly Held the Implied Covenant Applied to FHFA's Decision.*

According to Defendants, *Collins*' holding that the Sweep was within FHFA's statutory discretion precludes the implied-covenant claim. *See* Pet.8-9. Defendants get state law wrong.

As the panel correctly held in describing state law, "'[w]hen a party has ***sole*** discretion to make a decision, that setting provides ***more*** reason for the implied covenant to apply, not less.'" Op.19-20 (emphasis added) (quoting *Cygnus Opportunity Fund, LLC v. Wash. Prime Grp., LLC*, 302 A.3d 430, 460 (Del. Ch. 2023)); *accord Calumet Cap. Partners LLC v. Victory Park Cap. Advisors, LLC*, 353 A.3d 88, 125-27 (Del. Ch. 2026). The Delaware Supreme Court recently confirmed the implied covenant applies "when a contract allocates discretionary authority to one party over a central aspect of the contract." *Johnson & Johnson v. Fortis Advisors LLC*, 352 A.3d 229, 253 (Del. 2026). Defendants ignore this settled principle of state law.[2]

As the panel recognized and as Defendants acknowledge, §4617(b)(2)(J)(ii) granted FHFA "sole discretion" to "unilaterally determine[] what was in the [public's] 'best interests.'" Op.19-20; *see* Defs.Br.1 (§4617(b)(2)(J)(ii) "gave

---

[2] Virginia law, which governs the breach claims against Freddie Mac, accords with Delaware law in holding that the implied covenant applies when a contract confers broad discretion on one party. *See* Op.19-20 (citing Virginia cases). Defendants do not cite Virginia law, so this opposition likewise focuses on Delaware law.

FHFA broad discretion"). Thus, under state law, §4617(b)(2)(J)(ii) did not *displace* the implied covenant, as Defendants contend; rather, §4617(b)(2)(J)(ii) *requires* application of the covenant, as the panel held. Op.19-20. Defendants' position turns the significance of a grant of broad discretion on its head.

Defendants admit that HERA's "best interests" standard specifies only "*whose* interests FHFA may serve when exercising its conservatorship authority," not *how* FHFA is to exercise that discretion. Pet.9 (emphasis added); *see* Op.20. They further admit the covenant may be displaced only "when a contract provision states *how* a grant of discretion is to be exercised." Pet.11 (emphasis added). Here, the shareholder agreements do not contain "***any*** standard limiting ***how*** the FHFA is to make [the best-interests] determination." Op.20 (emphasis added).

Diving further into the state-law weeds, Defendants claim the panel misunderstood three state-court cases. *See* Pet.10-13. The panel said those cases found no contractual gap to be filled by the implied covenant because the "contracts provided a more specific process or standard that restrained the party's discretion" than the agreements here, which do "not contain any comparable feature or limitation on the FHFA's discretion." Op.20-21. The panel is correct.

In *Khan v. Warburg Pincus, LLC*, the contract expressly addressed whether minority shareholders would get the same consideration in an acquisition as controlling shareholders—so-called "tag-along" rights—and specified that such

rights could be eliminated through a majority vote of the minority shareholders, which ultimately occurred. 2025 WL 1251237, at *1, *6 (Del Ch. Apr. 30, 2025). The panel distinguished *Khan* on the ground that the contract specifically addressed the particular action at issue and provided a specific constraint on that action, i.e., the voting requirement. Op.20-21. Defendants say that voting "provision played *no part*" in *Khan*'s conclusion that the covenant did not apply, Pet.12, but that is wrong—it was central, *see* 2025 WL 1251237, at *6-7.

Similarly, in *Policemen's Annuity & Benefit Fund of Chicago v. DV Realty Advisors LLC*, the court held the implied covenant was inapplicable because the contract expressly "specified" that 75% of the limited partners could agree to remove the general partner, if they acted "in good faith." 2012 WL 3548206, at *11-12 (Del. Ch. Aug. 16, 2012). And in *Blaustein v. Lord Baltimore Capital Corp.*, the court found no gap because the contract specifically required that a stock repurchase must be approved "by a majority of the directors or 70% of the stockholders." 84 A.3d 954, 959 (Del. 2014).

The panel correctly distinguished these cases as involving challenges to actions that were specifically contemplated and constrained by express contractual provisions—a circumstance that does not exist here. Defendants criticize the panel for "requiring HERA to 'specifically' authorize the Sweep" to prevent a gap that the covenant would fill. Pet.10 (quoting Op.20). But the panel did not say the

covenant necessarily applies whenever a contract does not spell out every detail regarding the challenged conduct. Its point was merely that when a contract supplies a broad grant of general discretion without express restraints on its exercise, the implied covenant supplies the restraint. Op.20. That is settled state law, as shown above.

*2. This State-Law Issue Does Not Warrant En Banc Review.*

"En banc review is reserved for only the most important *federal* law issues." *In re Air Crash Disaster*, 821 F.2d 1147, 1169 n.38 (5th Cir. 1987) (emphasis added); *see* 11th Cir. R. 40-6; 3d Cir. I.O.P. 9.3.3; 6th Cir. I.O.P. 40(b)(1).

Defendants cite no case from this Court granting en banc review on a state-law issue, or any basis for an exception to this well-established practice. The state-law issue presented here involves the case-specific application of settled state law, and the issue is unlikely to arise in future federal cases. *See* Op.18-19.

**B. *Collins* Did Not Address Whether FHFA Complied With the Implied Covenant.**

Defendants also argue that *Collins* foreclosed the implied-covenant claim from going to the jury because it said that FHFA "could have reasonably concluded" the Sweep served the public interest. Pet.2, 7, 13-14 (citing 594 U.S. at 239-40). But as the panel correctly found, the cited passage merely addressed whether the Sweep was the kind of action that fell "within the scope of the FHFA's statutory authority to act in the public interest." Op.16. *Collins* did not make

factual findings about the reasonableness of FHFA's actions, let alone determine whether FHFA's actions violated shareholders' reasonable contractual expectations.

As the panel explained, *Collins* addressed "a different type of reasonableness analysis" from the one raised by the implied-covenant claim. Op.16. The APA claim in *Collins* required the Court to decide whether agreeing to the Sweep was the kind of action HERA gave FHFA broad discretion to take; by contrast, the implied-covenant claim required the jury to decide whether FHFA's actions "arbitrarily or unreasonably" frustrated shareholders' "reasonable expectations." Op.12, 16.

Defendants do not dispute "the panel's distinction" between these two types of reasonableness analyses. Pet.13. Instead, Defendants purport to embrace it, arguing that Plaintiffs had to prove *both* (a) that FHFA's actions were unreasonable when looked at in isolation and without reference to shareholder expectations, and (b) that those actions also violated shareholders' reasonable contractual expectations. *Id.*; Pet.15. Defendants claim that by (supposedly) resolving the former type of reasonableness in FHFA's favor, *Collins* precluded the jury from finding that FHFA breached the covenant regardless of what the jury might find as to the latter type of reasonableness. Pet.13.

This argument fails for three reasons. *First*, Defendants misunderstand *Collins*. *Collins* did not evaluate whether the Sweep was a "reasonable" act at all.

It said only that FHFA "could have reasonably concluded that [the Sweep] was in the [public's] best interests." 594 U.S. at 239. That was at least two steps removed from finding the Sweep to actually have been reasonable. For one, being abstractly in the public interest does not necessarily make an act reasonable. For another, *Collins* did not find the Sweep was in the public interest; it found only that FHFA *could* have concluded it was in the public interest, i.e., that such a finding was plausible and hence within FHFA's discretionary authority, thus foreclosing consideration of the merits of the APA claim. That *theoretical* assessment reflects the only question presented in *Collins*——*not* whether the Sweep was valid or reasonable, but only whether it "exceed[ed]" FHFA's "authority" under HERA in order to bypass HERA's anti-injunction provision. *Id.* at 242. Under the APA, it is only the arbitrary-and-capricious claim that covers "substantive unreasonableness." *Multicultural Media, Telecom & Internet Council v. FCC*, 873 F.3d 932, 936 (D.C. Cir. 2017); *compare* 5 U.S.C. §706(2)(A), *with* §706(2)(C). But no claim of arbitrary and capricious agency action was presented in *Collins*. 594 U.S. at 227, 235, 236 n.11.[3]

*Second*, Defendants misunderstand the state-law duty imposed by the covenant. Under the covenant, an act's reasonableness is evaluated not in

[3] Even if a "substantive unreasonableness" claim had been presented in *Collins*, the Court could not have resolved that claim because it held at the threshold that §4617(f) barred the APA's injunctive and declaratory relief claims.

isolation, but rather *with respect to* the counterparty's reasonable expectations. The covenant's purpose is "to protect [the parties'] reasonable expectations," so as to "ensure that the [party] use[s] its discretionary power reasonably as the parties expected." *Johnson & Johnson*, 352 A.3d at 253-54; *see Nemec v. Shrader*, 991 A.2d 1120, 1126 n.16 (Del. 2010) (covenant's purpose is "to honor the parties' reasonable expectations"). Thus, the jury was instructed to determine whether the Sweep "arbitrarily or unreasonably violated plaintiffs' reasonable expectations under the contract." Op.18. Or, as the panel put it, the question was "whether the Net Worth Sweep was reasonable *based upon the expectations* of the parties." Op.16 (emphasis added). *Collins* did not evaluate whether the Sweep was reasonable "based upon" the shareholders' reasonable expectations.

Defendants stress that the *Collins* plaintiffs "assert[ed] factual allegations materially identical to Plaintiffs' here." Pet.13-14. But, as the panel recognized, that superficial "overlap" is irrelevant because, again, "the question whether the FHFA acted within its statutory authority"—the question in *Collins*—"is not coextensive with the question whether it acted in accordance with the shareholders' reasonable expectations"—the question here. Op.16-17.

*Third*, rehearing en banc "would be inappropriate because [this argument] was not briefed or argued to the panel." *King v. Palmer*, 778 F.2d 878, 883 (D.C. Cir. 1985) (concurring in denial of rehearing en banc). While Defendants now

contend Plaintiffs had to prove *both* types of unreasonableness (as Defendants understand them), Defendants previously made a totally different argument, telling the panel there was "no distinction at all" between *Collins*' reasonableness analysis and the covenant's reasonableness analysis. Defs.Br.25 ("There is no daylight between shareholders' reasonable expectations and the Supreme Court's holding that FHFA as Conservator *reasonably* determined that its actions served the public interest.").

## II. THE PANEL'S DECISION THAT THE CLAIM IS NOT BARRED BY §4617(f) IS CORRECT AND CONSISTENT WITH *COLLINS* AND *JACOBS*.

HERA states: "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator." §4617(f). For the first decade of this case, Defendants agreed this provision (like its precursor under FIRREA) did not bar claims for breach-of-contract damages—they did so even when specifically asked by this Court in a 2016 post-argument order about the potential bars over Plaintiffs' claims.[4] So this argument was waived. *Contra* Op.13 n.†.

---

[4] Defendants did not raise §4617(f) as a bar to Plaintiffs' breach-of-implied-covenant damages claims in their 2013 original dismissal motion, JA107, JA129, nor in the appeal this Court decided in 2017. *Compare* Case #14-5243 (D.C. Cir.), Dkt.#1589892 at 20-42, *with id.* at 54-59. After argument in that appeal, this Court asked for supplemental briefs addressing potential bars to Plaintiffs' contract claims. *Id.*, Dkt.#1620583. In response, Defendants argued §4617(f) barred claims for injunctive and declaratory relief, but said nothing about it barring any damages claims. *Id.*, Dkt.#1610211 at 1 ("As advanced by FHFA in its prior briefing and at oral argument, Section 4617(f) bars Plaintiffs' injunctive and declaratory claims …."); *Id.*, Dkt.#1624902 at 5 n.3 (same).

But even if not waived, that Defendants failed to make this argument for a decade in this case should cause it to be viewed with great skepticism.

The panel correctly rejected the argument by holding (as the district court did in 2014) that, although §4617(f) bars "claim[s] for declaratory and injunctive relief," it does not bar Plaintiffs' "contract claim for damages." Op.15. Defendants say that ruling is "at odds" with *Collins*, with the Third Circuit's decision in *Jacobs v. FHFA*, 908 F.3d 884 (3d Cir. 2018), and with §4617(f)'s text. Pet.15-16. Each point is wrong.

*First*, the panel's decision accords with §4617(f)'s text and history. Identical language is found in FIRREA, in 12 U.S.C. §1821(j). Long before HERA, courts consistently interpreted this FIRREA language as *not* barring claims for compensatory damages based on breach of a contract or other legal duty. *See Freeman v. FDIC*, 56 F.3d 1394, 1398-99 (D.C. Cir. 1995) (§1821(j) bars "nonmonetary remedies, including injunctive relief, declaratory relief, and rescission," but allows clams for "money damages"); *Hindes v. FDIC*, 137 F.3d 148, 161 (3d Cir. 1998) ("Courts uniformly have held that the preclusion of section 1821(j) does not affect a damages claim." (collecting cases)); *Sharpe v. FDIC*, 126 F.3d 1147, 1155 (9th Cir. 1997) ("The damages claim is not affected by the jurisdictional bar imposed by §1821(j), but the claims for rescission and declaratory relief must fall under an exception to §1821(j) in order to survive.");

*Ambase Corp. v. United States*, 61 Fed. Cl. 794, 799 (2004) (§1821(j) "is not directed to the pursuit of money damages *ex post* as the result of FDIC actions" and "does not prevent … hearing … Plaintiff's claims" for contract damages). Further, this Court recognized that "serious due process concerns would be implicated" if FIRREA's precursor to §4617(f) meant that aggrieved parties "were left entirely without remedies." *Freeman*, 56 F.3d at 1399.

Congress "presumptively was aware of the longstanding judicial interpretation of the phrase" it adopted in §4617(f), so it "intended for [that language] to retain its established meaning" when it enacted HERA. *Lamar, Archer & Cofrin, Llp v. Appling*, 584 U.S. 709, 721-22 (2018). Had Congress wished to foreclose all state-law liability for breaches of contract committed by FHFA during conservatorship, it could have written HERA to do so. By copying the FIRREA language, plainly it did not.

*Second*, there is no conflict with *Jacobs*. The panel expressly agreed with *Jacobs* that, in applying §4617(f), "'the focus is not on the *form* of requested relief, but its *effect*.'" Op.35 (quoting *Jacobs*, 908 F.3d at 895). Both courts recognized that §4617(f) "bars *some* monetary claims," but not *all* monetary claims. *Jacobs*, 908 F.3d at 894-95; Op.34-36. As *Jacobs* observed, §4617(f) "leaves open 'a judicial remedy for an *appropriate* damages claim.' … But not all damages claims are appropriate." 908 F.3d at 895. *Jacobs* held that the claim for "disgorgement"

in that case—though for monetary relief—was barred by §4617(f) because it would "void [the Sweep] and force the Treasury to disgorge all the dividends that it received under" the Sweep. *Id.* at 894-95. In reaching that conclusion, however, *Jacobs* favorably cited *Perry*'s holding that "breach of contract" damages claims are *not* barred, distinguishing the claims at issue in *Jacobs* because they were "not claims for breach of contract." *Id.* at 895 (citing *Perry*, 864 F.3d at 614). Here, the panel tracked *Jacobs*' holding and reasoning as to both types of monetary claims. Like *Jacobs*, the panel held that Plaintiffs' claim for restitution was barred "regardless whether we characterize rescission as equitable or legal" because "the remedy would unwind the shareholder contracts in their entirety." Op.34-35. Yet, the panel also concluded—quoting *Jacobs*—that Plaintiffs' "implied covenant claim for damages against the FHFA as conservator" is "an 'appropriate damages claim,'" which "courts may allow to proceed against the FHFA." Op.14 (quoting *Jacobs*, 908 F.3d at 895).

*Third*, there is no conflict with *Collins*. As the panel recognized, *Collins* "never considered how §4617(f) would apply to a contract claim for damages; that case involved a statutory claim for declaratory and injunctive relief." Op.15; *see* 594 U.S. at 227. Moreover, consistent with the panel's decision, *Collins* called §4617(f) the "anti-injunction clause," implying it does not block breach-of-contract damages claims. *E.g.*, 594 U.S. at 242. Defendants focus on *Collins*' general

remark that FHFA's "business decisions are protected from judicial review" under §4617(f), Pet.16 (citing 594 U.S. at 254), but the panel correctly found this remark must "be read in the context of [*Collins*'] narrow holding on the statutory claim," not overread as a new, absolutist gloss on §4617(f)'s scope, Op.15. The panel was right: "The language of an opinion" must be read in light of its "particular context and [the] particular work" it did in the opinion, rather than "parsed as though [the court] were dealing with language of a statute." *National Pork Producers Council v. Ross*, 598 U.S. 356, 373-74 (2023). In fact, the remark was not discussing §4617(f)'s scope at all but was in the decision's section addressing the constitutional claim challenging the Director's "for-cause" removal provision. 594 U.S. at 254. It would make no sense to read that isolated remark as overturning, without analysis, decades of settled precedent interpreting identical statutory language as inapplicable to breach-of-contract damages claims.

Finally, Defendants argue §4617(f) applies because "[b]y attaching enormous liability to the selection of one authorized course rather than another, the judgment changes the consequences of exercising the Conservator's statutory authority." Pet.17. This appears to be an argument that §4617(f) bars any breach-of-contract damages judgment that might have been considered by FHFA when it made a decision that might breach a contract. That wildly broad understanding of §4617(f) is unprecedented, and would seemingly bar all breach-of-contract

damages claims. It cannot be right. "What matter[s]" is whether "the relief would have impeded the [conservator's] powers," *Jacobs*, 908 F.3d at 895, such as by voiding or unwinding the action. Defendants do not claim the panel's decision would do that, nor could they. Defendants presented no evidence at trial showing that their potential liability, let alone the actual damages found by the jury, could have discouraged FHFA from agreeing to the Sweep. Plus, the notion that FHFA would have been deterred from agreeing to the Sweep by the possibility of a potential 0.5% charge on its decision to send well over $150 billion in excess dividends to Treasury—which is all the damages judgment amounts to here—is implausible and has no basis in the record. *See Perry*, 864 F.3d at 630 (covenant not "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting HERA).

## CONCLUSION

The petition should be denied.

October 1, 2026

Respectfully submitted,

*/s/ Hamish P.M. Hume*
Hamish P.M. Hume
Samuel C. Kaplan
David Lehn
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW

Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com
dlehn@bsfllp.com

Eric L. Zagar
**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

Michael J. Barry
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com

Adam Wierzbowski
Robert Kravetz
**BERNSTEIN LITOWITZ**
**BERGER**
**& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Counsel for Appellee Class*

David H. Thompson
Brian W. Barnes

John D. Ramer
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
Tel: (202) 220-9659
Fax: (202) 220-9601
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Attorneys for Berkley Plaintiffs-Appellees/Cross-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i), because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 3,890 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: October 1, 2026

*/s/Hamish P.M. Hume*
Hamish P.M. Hume

## CERTIFICATE OF SERVICE

I certify that on October 1, 2026, I filed a copy of this brief using the Court's case management electronic case filing system, which will automatically serve notice of the filing on registered users of that system.

Dated: October 1, 2026

*/s/Hamish P.M. Hume*
Hamish P.M. Hume